Filed 1/24/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LUCIA GONZALEZ, | B246825 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. VC060315) |
| SEAL METHODS, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court for Los Angeles County, Raul A. Sahagun, Judge. Affirmed.

Panish Shea & Boyle, Rahul Ravipudi; Law Offices of John J. Perlstein, John J. Perlstein; The Ehrlich Law Firm and Jeffrey Isaac Ehrlich for Plaintiff and Appellant.

Musick, Peeler & Garrett, William A. Bossen and Cheryl A. Orr for Defendant and Respondent.

Plaintiff Lucia Gonzalez was working for defendant Seal Methods, Inc. (SMI) when she was severely injured while loading material onto a die in a power press. She sought damages from SMI in a lawsuit filed under Labor Code[1] section 4558, which allows an employee to "bring an action at law for damages against the employer where the employee's injury or death is proximately caused by the employer's knowing removal of, or knowing failure to install, a point of operation guard on a power press, and this removal or failure to install is specifically authorized by the employer under conditions known by the employer to create a probability of serious injury or death." (§ 4558, subd. (b).) The trial court granted SMI's motion for summary judgment, finding that section 4558 did not apply under the undisputed facts of this case. We affirm the judgment.

## BACKGROUND

The accident at issue in this lawsuit occurred while Gonzalez was operating a power press, referred to as Preco Punch Press No. 4 (the Press), in the course and scope of her employment with SMI. The Press is an industrial machine that uses a die to shape material by pressing against or punching through the material. At the time of the accident, Gonzalez was operating the Press in "manual" mode because the material being shaped had to be moved onto and off of the die by hand. The Press was equipped with a two-hand activator system for operation in manual mode; the die would not strike unless the operator used both hands to press buttons located outside the strike zone (the "point of operation"). The purpose of this two-hand activator system was to ensure that the operator's hands were outside the point of operation during the machine stroke.

---

[1] Further undesignated statutory references are to the Labor Code.

There is no evidence that SMI bypassed, removed, or tampered with the two-hand activator system on the Press used by Gonzalez. Nevertheless, on March 17, 2011, the Press activated while Gonzalez was loading material onto the die, crushing her hand. Gonzalez subsequently filed the instant lawsuit for general, special, and punitive damages, alleging that SMI knowingly removed or failed to install a point of operation guard on the Press.

SMI moved for summary judgment on the ground that the point of operation guard specified by the manufacturer of the Press – the two-hand activator system – was properly installed and activated, and the manufacturer did not specify or require any other point of operation guard. Gonzalez opposed the motion, contending that the operation manual for the Press requires the use of safety blocks (which are small wooden or metal blocks that are placed in the point of operation to physically prevent the machine from striking) whenever the operator's hands are in the point of operation, and that those safety blocks constitute a point of operation guard. The trial court found there was no evidence that SMI received any communication from the manufacturer that safety blocks needed to be installed or otherwise attached to the Press, and granted SMI's summary judgment motion. Gonzalez timely filed a notice of appeal from the resulting judgment.

**DISCUSSION**

"Where an employee is injured in the course and scope of his or her employment, workers' compensation is generally the exclusive remedy of the employee . . . against the employer. [Citation.] The 'exclusivity rule' is based upon a presumed compensation bargain: '[T]he employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial

3

injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort.' [Citation.] [¶] There are, however, limited statutory exceptions to the exclusivity rule that authorize the injured worker to seek to augment the workers' compensation benefits by bringing an action at law for damages against the employer. [Citations.] One such exception is found in section 4558, the 'power press exception.' Section 4558 authorizes an injured worker to bring a civil action for tort damages against his or her employer where the injuries were 'proximately caused by the employer's knowing removal of, or knowing failure to install, a point of operation guard on a power press,' where the 'manufacturer [had] designed, installed, required or otherwise provided by specification for the attachment of the guards and conveyed knowledge of the same to the employer.' (§ 4558, subds. (b) & (c).)" (*LeFiell Manufacturing Co. v. Superior Court* (2012) 55 Cal.4th 275, 279-280, fn. omitted.)

Whether the section 4558 exception applies in this case hinges upon whether a safety block is a "point of operation guard" within the meaning of section 4558. If it is, the determination whether the manufacturer communicated to SMI that safety blocks must be used whenever a worker must manually position material on the die is a question of fact, and the facts are disputed in this case. But if a safety block is *not* a point of operation guard, section 4558 does not apply and the judgment must be affirmed.

We begin, as we must, with the language of section 4558. """"In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose. . . ." [Citations.]' [Citation.] ""Section 4558 was enacted as part of an extensive overhaul of the workers compensation system designed to address perceived inadequacies in the rules. Employees claimed benefits were too low, while employers and their insurers felt the system was too costly, particularly due to the

4

increasing number of exceptions to the workers' compensation exclusive remedy rule. The resulting legislation reflected a carefully crafted compromise among employer, employee and insurer groups providing increased benefits for injured workers and their families and the potential for decreased expenses for the employer by strengthening the exclusive remedy rules. In the final legislative package there were only four circumstances under which a worker could bring a civil action against the employer, including the power press exception at issue here. [¶] The language of section 4558 reflects the Legislature's careful drafting of the terms triggering the application of the statute.' [Citation.] Accordingly, the power press exception to the workers' compensation exclusivity rule in section 4558 must be narrowly construed." (*LeFiell Manufacturing Co. v. Superior Court*, *supra*, 55 Cal.4th at p. 286.)

Section 4558 does not define "point of operation guard," but the language of the statute leads us to conclude that a point of operation guard does not include an unattached device, such as a safety block, that the worker moves into and out of the point of operation. The first indication that a safety block is not a point of operation guard is found in the statute's definition of "Failure to install." The statute defines that phrase as "omitting to attach a point of operation guard either provided or required by the manufacturer, when the attachment is required by the manufacturer and made known by him or her to the employer at the time of acquisition, installation, or manufacturer-required modification of the power press." (§ 4558, subd. (a)(2).) We infer from this definition that a point of operation guard is a device capable of being permanently attached to the power press.

Although we acknowledge that a safety block could be "attached" to the Press by means of a chain or other device, another provision of the statute prevents us from concluding that a safety block that must be moved into and out of the point

5

of operation by the worker was intended by the Legislature to be included as a point of operation guard.[2] The statute defines "Removal" as "physical removal of a point of operation guard which is either installed by the manufacturer or installed by the employer pursuant to the requirements or instructions of the manufacturer." (§ 4558, subd. (a)(5).) The kind of safety block at issue here is not a device or guard that is installed by the manufacturer or the employer and thus subject to "removal" by the employer as contemplated by the statute.

Gonzalez's reliance on *Bingham v. CTS Corp.* (1991) 231 Cal.App.3d 56 to argue that "point of operation guard" must be interpreted to include safety blocks is misplaced. In *Bingham*, the appellate court observed that, "[i]n determining the meaning of the words of a statute, we must read the legislation in the light of the objective sought to be achieved by it." (*Id.* at p. 64.) The *Bingham* court agreed with the court in *Ceja v. J.R. Wood, Inc.* (1987) 196 Cal.App.3d 1372 "that the obvious legislative intent and purpose of section 4558 is 'to protect workers from employers who wilfully remove or fail to install appropriate guards on large power tools. . . . These sorts of machines are difficult to stop while they are in their sequence of operation. Without guards, workers are susceptible to extremely serious injuries.'" (*Bingham v. CTS Corp.*, *supra*, 231 Cal.App.3d at pp. 64-65, quoting *Ceja v. J.R. Wood, Inc.*, *supra*, 196 Cal.App.3d at p. 1377.) With this legislative purpose in mind, the *Bingham* court concluded that a point of operation guard "is meant to include the myriad apparatus which are available to accomplish the purpose of keeping the hands of workers outside the point of operation whenever the ram is capable of descending." (*Bingham v. CTS Corp.*, *supra*, 231

---

[2] We note that a safety block such as that described by Gonzalez in her appellant's reply brief, which is attached to and interlocked with the power press, so that power is cut off to the press when the block is removed from its holder, is not at issue here. Instead, our analysis is confined to a safety block that is not attached to or interlocked with the Press.

6

Cal.App.3d at p. 65.) In *Bingham*, there were two such devices found to be point of operation guards within the meaning of section 4558: a two-hand activator system, and a photo electric presence sensing device (i.e., a "light curtain," which is designed to render the press inoperable if the worker's hands are in the point of operation) for use whenever the operator was required to manually place the work in the die area. (*Id.* at p. 67.) Gonzalez contends that a safety block is a "low-tech equivalent" to the light curtain, intended to protect a worker's hands when the job at issue requires the worker to reach into the die area.

While it is true that, in effect, a safety block is a "low-tech equivalent" to a light curtain, that does not mean that a safety block is the kind of point of operation guard contemplated by section 4558. The Legislature could have drafted the exception to apply when the worker's injury was proximately caused by the employer's failure to follow, or direction to the worker not to follow, the manufacturer's communicated safety directives. But it did not do so. We cannot ignore the language the Legislature actually used, which limits the exception to instances in which the worker's injury was proximately caused by the employer's failure to install or its removal of a point of operation guard.

Although we are sympathetic to Gonzalez, who suffered a horrible injury that might have been prevented had a safety block been used, we are bound by the Supreme Court's directive to construe the section 4558 exception to the workers' compensation exclusivity rule narrowly. Read in its entirety, section 4558 applies when an employer fails to attach or removes only those guards or devices, designed to protect workers, that are capable of being permanently installed by the manufacturer or the employer. The kind of safety block at issue in this case, which is not attached to the Press and is moved into and out of the point of operation by the worker, is not such a guard or device. Therefore, the trial court properly found that the section 4558 exception did not apply.

7

## DISPOSITION

The judgment is affirmed.

**CERTIFIED FOR PUBLICATION**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


MANELLA, J.

8