Filed 5/1/15 modified and certified for publication 5/28/15 (order attached)

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| ANWAR JONES, | ) | No. BV 030927 |
| | ) | |
| Plaintiff and Appellant, | ) | (Central Trial Court |
| | ) | No. 13K08903) |
| v. | ) | |
| | ) | |
| CREDIT AUTO CENTER, INC., | ) | |
| | ) | |
| Defendant and Respondent. | ) | **OPINION** |
| | ) | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Norman P. Tarle, Judge. Reversed.

Denise V. Foley, Esq. of Lamonica & Foley, and Michael R. Quirk, Esq. of the Law Office of Michael R. Quirk, for Plaintiff and Appellant Anwar Jones.

Michael Harris, Esq. of Rogers & Harris, for Defendant and Respondent Credit Auto Center, Inc.

No appearance by Defendant and Respondent International Fidelity Insurance Company.

1

## I. *INTRODUCTION*

Appellant and plaintiff Anwar Jones appeals the judgment in favor of respondent and defendant Credit Auto Center, Inc. and its surety, International Fidelity Insurance Company, following a court trial. (Further references to defendant are to Credit Auto Center, Inc.) Plaintiff contends the court erred in entering judgment against him on his causes of action based on defendant's violation of the implied warranty of merchantability under the Song Beverly Consumer Warranty Act (Song-Beverly Act) (Civ. Code, § 1790 et seq.), and defendant's deceptive sales practices under the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.). As discussed below, we reverse the judgment.

There was insufficient evidence to support the judgment in favor of defendant. Plaintiff proved a Song-Beverly Act cause of action because the vehicle he purchased from defendant was unfit for use as transportation due to a crack or hole in the transmission oil pan and a faulty transmission, which rendered the vehicle inoperable approximately one month after the purchase. Plaintiff proved his CLRA cause of action because defendant's oral and written representations stating the vehicle came with a warranty were deceptive since defendant charged plaintiff additional money to obtain the warranty, in the form of a service contract.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff's causes of action in his amended complaint were based on his purchase of a used Ford Windstar minivan from defendant at his used car sales lot. Plaintiff alleged defendant breached both the express and implied warranties of merchantability under the Song Beverly Act: within approximately one month after the purchase, the minivan's transmission malfunctioned rendering the vehicle inoperable, and defendant refused to cancel their credit installment sales contract and refund plaintiff's down payment. With respect to the CLRA action, plaintiff alleged that, on the day of the purchase, he was informed by defendant's owner and sole shareholder, Fred Preiss, that all his vehicles "came with a six-month warranty." But,

2

defendant subsequently told him that, to obtain the warranty, he had to pay $495 for a service contract. Plaintiff requested, inter alia, actual and incidental damages, a penalty of two times his actual damages (see Civ. Code, § 1794, subd. (c)), and attorney's fees and costs.

At trial, plaintiff testified he went to defendant's used car sales lot on September 10, 2012, and was assisted by Preiss in looking at several vehicles offered for sale. Preiss gave him a business card that stated, among other things, "Quality Pre-Owned Automobiles" and "6 months Warranty—all cars." Preiss also orally told plaintiff, "he sales [*sic*] all his vehicles with a six-month warranty." Plaintiff told Preiss he was interested in the minivan, and Preiss informed him the minivan had "low miles," and "that it was a good car."

The Buyers Guide displayed on the side of the minivan's window stated "Warranties for this vehicle:" followed by a large box, which was not checked off, and oversized bold print stating "AS IS—NO WARRANTY," with smaller bold print stating, "YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about this vehicle." (Capitalization in original, bold print omitted.) A large box which was checked off by a pair of x's preceded information in oversized bold print stating "WARRANTY," followed by a smaller box checked off by two x's preceding the following information in bold print, "LIMITED WARRANTY. The dealer will pay 100% of the labor and 100% of the parts for the covered systems that fail during the warranty period. Ask the dealer for a copy of the warranty documents for a full explanation of warranty coverage, exclusions, and the dealer's repair obligations. Under state law, 'implied warranties' may give you even more rights." (Capitalization in original, bold print omitted.) This information was followed by statements that the motor and transmission were covered by the warranty; that all work was to be performed at defendant's location; and that the duration of the warranty was for "6 months or 6,000 miles which ever [*sic*] comes first." Immediately after these statements in the Buyers Guide, a box was checked off preceding the following information in all bold, "SERVICE CONTRACT. A service contract is available at an extra charge on this vehicle.

Ask for details as to coverage, deductible, price, and exclusions. If you buy a service contract within 90 days of the time of sale, state law 'implied warranties' may give you additional rights." (Capitalization in original, bold print omitted.)

Plaintiff went inside a building on the lot to sign documents to purchase the vehicle. The vehicle's purchase order indicated, "THIS VEHICLE SOLD AS-IS," but also stated immediately following in smaller print, "UNLESS OTHERWISE INDICATED ON THE 'BUYER'S GUIDE' AFFIXED TO THE WINDOW OF THE VEHICLE." (Capitalization in original.) Both the purchase order and credit security agreement provided an itemization of the amount financed, which listed, among other fees and charges, the vehicle's price, and $495 for "Service Contract (optional)."

The service contract was on a separate document and indicated plaintiff would receive "Six months warranty on motor and transmission. 100% parts and labor for defects arising from normal driving." The service contract further specified that negligent operation of the vehicle "voids this warranty." The contract also listed all the items not covered, including electric repairs, tune-ups, fuel injection, computer sensors, and alternators.

Preiss testified he went over all the documents pertaining to the sale of the vehicle with plaintiff. Referring to the purchase order, Preiss told plaintiff, "You see this big fat 'As-Is'? It's not as is. If you look underneath, it says unless otherwise indicated, [in] the Buyer's Guide. . . . And I point to the Buyer's Guide. . . . See, here's your copy of the Buyer's Guide. You have a warranty." Preiss further told plaintiff with regard to the service contract, "You got a six-month warranty on motor and transmission." He gave plaintiff a copy of the service contract and told him, "Here's your service contract for the six-month warranty. It says 6,000 miles, and it's by Credit Auto Center . . . . You need to sign for it." During Preiss's testimony, plaintiff showed him the service contract and asked, "Is this the same six-month warranty that you refer to on the Buyers Guide?" and Preiss answered, "Yes."

4

Defendant signed the purchase order, credit security agreement, and service contract, and was given a copy of the Buyers Guide. Plaintiff paid $2,000 towards the price of purchase and financed the remainder.

Plaintiff noticed the minivan had problems with its automatic transmission while driving on the freeway on the way home from defendant's lot: the engine was revving louder than normal for the speed at which he was driving, and the vehicle was accelerating too slowly. The "service engine soon" light on the dashboard illuminated. He returned to the car lot on September 26, 2012. Preiss drove the minivan and did not find any problems with the transmission. However, Preiss did not drive on the freeway and did not exceed 40 miles per hour. Plaintiff was told by defendant to return on October 1, 2012, if he had any other problems with the vehicle so it could be serviced, and plaintiff drove the vehicle home. A few days after September 26, 2012, while his wife was driving the vehicle, the minivan was unable to be driven in reverse and could only be driven at very slow speeds, five to ten miles per hour. Plaintiff parked the vehicle in his apartment's parking spot and did not return to defendant's lot as directed by Preiss.

On October 24, 2012, the minivan was repossessed based on plaintiff's failure to make payments towards his installment contract, and towed to defendant's lot. Defendant inspected the minivan and determined it was undrivable. There was a crack or hole in the transmission oil pan which caused the fluid to leak out. The transmission unit was damaged and had to be replaced.

A declaration by Timothy Saurwein, an automobile mechanic, was admitted into evidence at plaintiff's request under Code of Civil Procedure section 98. Saurwein opined that, based on his examination of the vehicle's repair records, it was "impossible to determine when the transmission damage occurred." Records admitted into evidence indicated the minivan had

been driven a total of 1,196 miles from the time plaintiff purchased the vehicle to when it was inspected by defendant following its repossession.

The court rendered judgment in defendant's favor on all of plaintiff's causes of action. The court issued a statement of decision explaining its judgment.

The statement of decision indicated there was no breach of an express warranty of merchantability under the Song-Beverly Act because plaintiff only gave defendant a single opportunity to repair the vehicle. The court also found no breach of the implied warranty of merchantability because plaintiff drove the vehicle 1,196 miles, and "there was no breach of the implied warranty when it was sold since the van was drivable for over a thousand miles."

The court further indicated the CLRA was not violated because plaintiff was provided with sufficient notice he was being charged $495 for a service contract. The court found Preiss informed plaintiff he was buying a $495 service contract, and that the sales documents explained the contract was a separate item he was paying for. The court determined the Buyers Guide, by checking off that the vehicle came with a warranty and that a service contract was available at extra charge, informed the buyer "a service contract may be purchased, otherwise the vehicle is sold as is." (Because the court found against plaintiff on all his causes of actions, it did not address what damages, if any, he was entitled to.)

## III. *DISCUSSION*

With respect to our review of the sufficiency of the evidence supporting the judgment, we ascertain "'whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the [judgment] . . . .' [Citation.]" (*Perez v. VAS S.p.A.* (2010) 188 Cal.App.4th 658, 683-684.) We review de novo issues concerning statutory construction. (*Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1119.)

A.     Song-Beverly Act Cause of Action

6

1. *Breach of the implied warranty*

The trial court found there was no breach of the Song-Beverly Act's express warranty of merchantability (Civ. Code, § 1793.2) because plaintiff failed to allow a reasonable number of opportunities for repair of the vehicle (see Civ. Code, § 1793.2, subd. (d)). Plaintiff does not contend the court erred in this regard. Instead, plaintiff's contention is he proved all the elements of a breach of the implied warranty of merchantability under the Song-Beverly Act. (See *Mocek v. Alfa Leisure, Inc.* (2003) 114 Cal.App.4th 402, 404 ["there is no requirement the seller be given an opportunity to repair when the implied warranty of merchantability is breached"].)

Under the Song-Beverly Act, there is an implied warranty of merchantability with respect to consumer goods that are sold (Civ. Code, § 1792), unless the goods are sold with an express disclaimer stating they are sold "as is" or "with all faults." (Civ. Code, § 1791.3.) The Song-Beverly Act's implied warranty of merchantability applies to new goods (Civ. Code, § 1791, subd. (a)), and also used goods, so long as the used goods are purchased "in a sale in which an express warranty is given." (Civ. Code, § 1795.5.)

Pursuant to Civil Code section 1791.1, subdivision (a), the implied warranty of merchantability requires "that the goods meet each of the following: [¶] (1) Pass without objection in the trade under the contract description. [¶] (2) Are fit for the ordinary purposes for which such goods are used. [¶] (3) Are adequately contained, packaged, and labeled. [¶] (4) Conform to the promises or affirmations of fact made on the container or label." "The core test of merchantability is fitness for the ordinary purpose for which such goods are used. [Citation.]" (*Atkinson v. Elk Corporation of Texas* (2006) 142 Cal.App.4th 212, 228.)

A vehicle that is inoperable is unfit for the ordinary purpose for which it is used, which is transportation. (See *Isip v. Mercedes-Benz USA, LLC* (2007) 155 Cal.App.4th 19, 27.) It is

7

undisputed that, when the vehicle stopped running due to the crack or hole in the transmission oil pan and the faulty transmission, the vehicle was unfit.

The court found "there was no breach of the implied warranty *when [the vehicle] was sold* since the van was drivable for over a thousand miles." To the extent this finding indicates there was no defect that was *apparent* at the time of sale, it is supported by substantial evidence. Although plaintiff experienced transmission problems when he first drove the vehicle on September 10, 2012, Preiss found nothing wrong with the minivan on September 26, 2010, and the odometer readings in records admitted into evidence indicated defendant drove the minivan for many miles after that day until it finally ceased operating. However, a breach of the implied warranty of merchantability may be based on a defect which becomes known *after* a sale or delivery to a buyer.

Civil Code section 1795.5, subdivision (c), provides in relevant part: "The duration of the implied warranty of merchantability . . . with respect to used consumer goods sold in this state, where the sale is accompanied by an express warranty, shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable, but in no event shall such implied warranties have a duration of less than 30 days nor more than three months following the sale of used consumer goods to a retail buyer. Where no duration for an express warranty is stated with respect to such goods, or parts thereof, the duration of the implied warranties shall be the maximum period prescribed above."

By providing a duration period for the implied warranty of merchantability, Civil Code section 1795.5, subdivision (c), contemplates that a breach may occur either when the goods are first purchased, or afterwards, when a latent defect is discovered by the buyer. This is how the implied warranty of merchantability for new goods (Civ. Code, § 1791.1, subd. (c)), which for present purposes is the same as the one for used goods, was interpreted by *Mexia v. Rinker Boat Co., Inc.* (2009) 174 Cal.App.4th 1297 (*Mexia*).

8

*Mexia* observed that, to show a breach of the implied warranty of merchantability under California's Uniform Commercial Code (Civ. Code, § 2725, subd. (2)), "the purchaser was required to show that the defect existed at the time the product was sold or delivered." (*Mexia*, *supra*, 174 Cal.App.4th at p. 1304.) Thus, under the Uniform Commercial Code, "the product is either merchantable or not (and a breach of the implied warranty occurs or not) only at the time of delivery." (*Ibid.*) In contrast, in the duration provision in the Song-Beverly Act, "[which gives] the implied warranty a limited prospective existence beyond the time of delivery, the Legislature created the possibility that the implied warranty could be breached after delivery." (*Mexia*, *supra*, 174 Cal.App.4th at p. 1309.)

The trial court thus erred in determining the Song-Beverly Act was not violated because there was no breach of the implied warranty at the time the vehicle was sold. The breach occurred when the latent defect came to light, which was within the time period set forth in Civil Code section 1795.5, subdivision (c), i.e., within three months of the time of sale.

Plaintiff did not have to prove in his case-in-chief *why* the oil pan cracked or got a hole or the transmission ceased operating; his burden was solely to show the vehicle became unfit during the warranty period. (See *Donlen v. Ford Motor Co.* (2013) 217 Cal.App.4th 138, 149 ["the plaintiff is not obligated to identify or prove the cause of the car's defect. Rather, he is required only to prove the car did not conform to the . . . warranty"]; accord, *Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1102, fn. 8 [holding a plaintiff did not have to prove what caused a vehicle's oil leak which breached the Song-Beverly Act's warranty of merchantability].)

2.      *Civil Code section 1794.3*

Defendant contends the judgment should be affirmed because the evidence showed plaintiff was responsible for the vehicle's transmission fluid leak and he "never took the most

basic steps to secure the needed maintenance" to ensure the transmission would not be damaged. The argument is untenable.

Civil Code section 1794.3 provides: "The provisions of [the Song-Beverly Act] shall not apply to any defect or nonconformity in consumer goods caused by the unauthorized or unreasonable use of the goods following sale." Plaintiff did not have the burden at trial to disprove the vehicle's defect was caused by his unreasonable use or improper maintenance. Rather, we construe Civil Code section 1794.3 as an affirmative defense which had to be established by defendant.

The Song-Beverly Act provides a breach of the warranty of merchantability occurs when a good becomes unfit for the ordinary purpose for which it is used. (Civ. Code, § 1791.1, subd. (a).) An exception occurs when the defect or nonconformity is caused by the buyer's unauthorized or unreasonable use under Civil Code section 1794.3. "It is a 'familiar' and 'longstanding' legal principle that '"[w]hen a proviso . . . carves an exception out of the body of a statute or contract those who set up such exception must prove it."' [Citations.]" (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 23.) Defendant, as the party claiming the exemption from the Song-Beverly Act, had the burden to prove the exemption. Further, "[a]n 'affirmative defense' is one which 'sets forth facts from which it results that, notwithstanding the truth of the allegations of the complaint, no cause of action existed in the plaintiff at the time the action was brought.' [Citations.]" (*Salazar v. Maradeaga* (1992) 10 Cal.App.4th Supp. 1, 5.) Plaintiff alleged the vehicle became unfit and presented uncontradicted evidence the vehicle ceased functioning; to avail itself of Civil Code section 1794.3, defendant had to allege and prove that, notwithstanding the unfitness, the Song-Beverly Act did not apply due to plaintiff's improper use or maintenance. There was no substantial evidence presented at trial that plaintiff improperly used or maintained the vehicle.

B.     CLRA Cause of Action

The CLRA bars engaging in deceptive acts or practices in the sale of consumer goods. (Civ. Code, § 1770.) In assessing whether defendant violated the CLRA, the trier of fact must determine the effect defendant's action would have had on "'a reasonable consumer.' [Citation.]" (*Consumer Advocates v. Echostar Satellite Corp.* (2003) 113 Cal.App.4th 1351, 1360.) Under the *CLRA*, even if representations and advertisements are true, they may still be deceptive because "'[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable.' [Citation.]" (*Id.* at p. 1362.)

The court ruled against plaintiff on his CLRA cause of action based on the fact Preiss and the documents plaintiff was provided informed plaintiff he was being charged $495 for a service contract. These factual findings are supported by substantial evidence, and we defer to the trial court's determinations of credibility underlying them. (See *Perez v. VAS S.p.A.*, *supra*, 188 Cal.App.4th at pp. 683-684.) Plaintiff was clearly informed he had to pay $495 for the service contract.

However, the findings do not address plaintiff's claim that the representations made by Preiss, giving him a business card stating "6-months Warranty—all cars" and telling plaintiff he sold "all his vehicles with a six-month warranty," were deceptive because Preiss mischaracterized the express warranty in the Buyers Guide as the service contract.

The Buyers Guide had a box checked off, indicating the vehicle came with a six-month or 6,000-mile warranty on the motor and transmission, and instructing the buyer to "[a]sk the dealer for a copy of the warranty documents for a full explanation of warranty coverage, exclusions, and the dealer's repair obligations." The Buyers Guide also had a box checked off, indicating "a service contract is available at an extra charge for this vehicle." The service contract indicated a buyer would receive a "Six months warranty on motor and transmission," and it specified the ways the "warranty" would be voided and the systems excluded from

11

coverage, such as electric repairs, fuel injection, alternators, etc. The purchase order indicated the vehicle would be sold "As-Is," that is, without a warranty, unless otherwise indicated in the Buyers Guide. The purchase order further stated buying a service contract was "optional."

These documents indicate the vehicle was sold with a warranty, namely, the "Six month warranty on motor and transmission" which was listed in the Buyers Guide. Warranties and service contracts, though they may sometimes overlap, are intended by the Legislature to fall into distinct categories: a warranty specifies a product is fit and defect-free, whereas a service contract is "an agreement to provide repair services, a kind of insurance . . . generally purchased 'for an additional cost.' [Citation.]" (*Gavaldon v. DaimlerChrysler Corp.* (2004) 32 Cal.4th 1246, 1258.) The Buyers Guide stated the vehicle came with a warranty, and the purchase order indicated that buying a service contract was "optional."

The trial court determined plaintiff was informed by the Buyers Guide that "a service contract may be purchased, otherwise the vehicle is sold as is." This finding was not supported by the record. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 847.) The "AS IS—NO WARRANTY" box in the Buyers Guide was not checked off; instead, the boxes next to "WARRANTY" and "LIMITED WARRANTY" were checked off, thereby providing that the vehicle came with a warranty, regardless of whether a service contract was purchased. (See 16 C.F.R., § 455.2, subd. (b) [used car dealer indicates a vehicle is sold with a warranty by marking the "Warranty" box in the Buyers Guide].)

Despite the fact a warranty was included in the price of the minivan and the vehicle was thus not sold "as is," Preiss told plaintiff the service contract, which had to be purchased at additional cost, *was* the warranty. Preiss testified he told plaintiff, referring to the purchase order, "You see this big fat 'As-Is'? It's not as is. If you look underneath, it says unless otherwise indicated, [in] the Buyer's Guide. . . . And I point to the Buyer's Guide. . . . See, here's your copy of the Buyer's Guide. You have a warranty." But, Preiss then told plaintiff,

"You got a six-month warranty on motor and transmission," and gave him a copy of the *service contract*, telling him, "[H]ere's your service contract for the six-month warranty." Preiss was shown the service contract during his testimony, and he acknowledged that the service contract was the six-month warranty he referred to in the Buyers Guide. Preiss deceived plaintiff by failing to differentiate between the warranty and the service contract, telling plaintiff he would have to pay $495 to obtain the warranty, in the form of a service contract.

The deception was facilitated by the service contract referring to its provisions as a "warranty," indicating it constituted a "six month *warranty* on motor and transmission" and specifying negligent operation of the vehicle "voids this *warranty*." The deception was also made easier to believe by the similarities between the provisions of the warranty and those of the service contract, wherein the only difference was the service contract did not contain a 6,000-mile limit. (In this regard, Preiss was also deceptive because he told plaintiff the service contract *did* have a mileage limit, telling plaintiff, "here's your service contract for the six month warranty. *It says 6,000 miles*, and it's by Credit Auto Center . . . . You *need* to sign for it.") Lastly, the deception was made easier because the Buyers Guide stated plaintiff should "[a]sk the dealer for a copy of the warranty documents for a full explanation of warranty coverage, exclusions, and the dealer's repair obligations," but the sole document he was given that explained coverage and exclusions was the service contract.

The evidence was insufficient to show Preiss did not violate the CLRA by "Representing that goods or services have . . . characteristics [or] benefits . . . which they do not have . . . ."; "Advertising goods or services with intent not to sell them as advertised"; and/or "Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." (Civ. Code, § 1770, subd. (a)(5), (9), (14), respectively.) Substantial evidence did not support a judgment in favor of defendant on the CLRA cause of action.

13

## IV. *DISPOSITION*

The judgment is reversed.  Plaintiff to recover costs on appeal.

_____
RICCIARDULLI, J.

We concur.

_____
KUMAR, Acting P. J.

_____
B. JOHNSON, J.

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| ANWAR JONES, | ) | No. BV 030927 |
| | ) | |
| Plaintiff and Appellant, | ) | Central Trial Court |
| | ) | |
| v. | ) | No. 13K08903 |
| | ) | |
| CREDIT AUTO CENTER, INC., | ) | |
| | ) | |
| Defendant and Respondent. | ) | **ORDER** |
| | ) | |

Appellant's request to certify for publication the opinion filed herein on May 1, 2015, is granted.  (Cal. Rules of Court, rule 8.1105(c)(2), (6) & (8).)

It is ordered that the opinion be modified as indicated below.  The modification does not change the judgment.

1. On page 1, line 1, insert the following:

"**TO BE PUBLISHED IN THE OFFICIAL REPORTS**

This opinion has been certified for publication in the Official Reports.  It is being sent to assist the Court of Appeal in deciding whether to order the case transferred to the court on the court's own motion under rules 8.1000-8.1018."

2. On page 1, line 7, insert "**CERTIFIED FOR PUBLICATION**".

1

3. On page 1, line 17, insert the following:

"APPEAL from a judgment of the Superior Court of Los Angeles County, Norman P. Tarle, Judge. Reversed.

Denise V. Foley, Esq. of Lamonica & Foley, and Michael R. Quirk, Esq. of the Law Office of Michael R. Quirk, for Plaintiff and Appellant Anwar Jones.

Michael Harris, Esq. of Rogers & Harris, for Defendant and Respondent Credit Auto Center, Inc.

No appearance by Defendant and Respondent International Fidelity Insurance Company."

_____
Ricciardulli, J.

_____
Kumar, Acting P. J.

_____
B. Johnson, J.

2