Filed 12/18/25  JPMorgan Chase Bank v. Buenzli CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., | C102530 |
| Plaintiff and Respondent, | (Super. Ct. No. 23CV1898) |
| v. | |
| CHRISTINA BUENZLI, | |
| Defendant and Appellant. | |

Defendant Christina Buenzli, proceeding in propria persona, appeals a $32,314.34 judgment entered against her and in favor of plaintiff JPMorgan Chase Bank, N.A. (the Bank).  Because Buenzli has not provided us with either an adequate record or reasoned arguments with citations to authority, we affirm.

**BACKGROUND**

The record on appeal is sparse.  It consists of a clerk's transcript that contains only three of the underlying documents in this case[1] and an incomplete reporter's transcript.

---

[1]     It also contains the notice of appeal, the notice designating the record on appeal, the register of actions, and clerk's certificates regarding the record.

Although we know the Bank sued Buenzli, the complaint is not included in the clerk's transcript (because Buenzli did not ask that it be included). From the register of actions, it appears the Bank asserted some type of contract claim against Buenzli, and in her brief she states it sued her "for an alleged credit card debt."

Buenzli filed a form answer to the complaint, and the answer is part of the clerk's transcript. The answer neither admits nor denies the allegations in the complaint.[2] Attached to the answer are several unauthenticated documents that purportedly relate to affirmative defenses. The first is an "Affidavit of Truth" signed by Buenzli with attached exhibits.[3] If we understand the affidavit and the exhibits correctly, it appears Buenzli had a credit card issued by the Bank, and the Bank sent her a bill in or around September 2022 stating the balance on the card was $28,820.51, and a minimum payment of $645 was due by October 7, 2022. Buenzli detached the payment stub from the bottom of the bill, wrote "$28,820.51" in the space marked "Amount Enclosed," and mailed it to cardmember services. Buenzli referred to this as the "coupon payment," and it appears she contends this was sufficient to pay the bill in full, as she subsequently wrote in a letter to the Bank's chief executive officer, which is also attached to the answer. There is nothing in the record that suggests Buenzli ever remitted any form of payment.

Also attached to the answer is a document titled "Writ in the Nature of Discovery,"

---

[2] "When a fact alleged in the complaint is not denied, it is deemed admitted and no evidence need be offered to prove the existence of that fact." (*Carew v. Carew* (1959) 175 Cal.App.2d 706, 707; see also Code Civ. Proc., § 431.20, subd. (a) ["Every material allegation of the complaint . . . , not controverted by the answer, shall, for the purposes of the action, be taken as true"].)

[3] An affidavit must be signed under penalty of perjury. (See Code Civ. Proc., § 2015.5.) This one is not. Instead, it is signed, "Sincerely and without ill will, vexation, or frivolity." An affidavit or declaration "not signed under penalty of perjury under the laws of California has 'no evidentiary value' and can be disregarded." (*Safieddine v. MBC FZ, LLC* (2024) 103 Cal.App.5th 1086, 1094, fn. 9.)

which is addressed to the superior court judge assigned to the case, with a "cc" to the Bank's counsel. The writ seeks various documents, including "the '**Original Promissory Note**' . . . associated with the loan," "**Bookkeeping Journal Entries** associated with the Loan**," and "the '**Deed of Trust**' associated with the loan." We note that a writ is not the proper procedure for requesting discovery in California, which is instead governed by the Civil Discovery Act, Code of Civil Procedure section 2016.010 et seq. We also note that discovery should be addressed to the opposing party, not the judge.

Also attached to the answer is a letter addressed to the judge, once again with a "cc" to the Bank's counsel, seeking any "competent evidence that I, Christina-Louise: Buenzli, Beneficiary, have any legal obligation to pay you." A letter addressed to the judge is also not the proper procedure for requesting discovery.

Also attached to the answer is a document titled "Notice of Intent—Fee Schedule." Buenzli fails to explain what this document is or how it is relevant to this case.

The last attachment to the answer is an Internal Revenue Service (IRS) form (Form 56) titled "Notice Concerning Fiduciary Relationship." According to the IRS's Web site, this form must be filed by "[a] fiduciary . . . who seeks to act on behalf of a taxpayer before the IRS, or to inform the IRS that the fiduciary capacity has terminated." (https://www.irs.gov/instructions/i56 [as of December 16, 2025], archived at https://perma.cc/3KPG-329J.) The form designates the judge to act as Buenzli's fiduciary. Again, we are not told how this document is relevant to the case, or, for that matter, why Buenzli would designate the judge to act as her fiduciary before the IRS.

The second document in the clerk's transcript is a declaration filed by Buenzli that states "Judicial Notice is a Form of Evidence—See Attached Ruling by Justice Gorsuch." Attached to the declaration is a one-page document that contains various quotations, most

3

unattributed.[4]  The relevance of this document, and the quotations it contains, is unclear.

The final document in the clerk's transcript is the judgment after trial, which states the following:  "Proof having been made to the satisfaction of the court that the defendant had proper notice of the time and place fixed for trial of this action, the court heard the testimony and considered the evidence, and good cause appearing therefore;  [¶]  IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff JPMorgan Chase Bank, N.A. have judgment against defendant CHRISTINA L BUENZLI in the principal sum of $32314.34 plus costs of $0.00 . . . for a total judgment of $32,314.34."

In addition to the clerk's transcript, we have been provided with a reporter's transcript for a proceeding held on September 17, 2024.  From that transcript, it appears this was the second day of a two-day trial, and the first day of trial was held on August 23 (and we note Buenzli confirms in her opening brief that the trial was held on August 23 and September 17).  It further appears that, on the first day of trial, Mariana Echaverria-Licona, a senior authorized signing officer for the Bank, testified on its behalf; that Buenzli had an opportunity to cross-examine her; and that Bank records were admitted into evidence.  We have not been provided with a reporter's transcript for the August 23 trial date and thus do not know what Echaverria-Licona testified to or what records were admitted into evidence.

---

[4]     The following quote is attributed to Justice Gorsuch:  "We don't usually say the government can avoid a constitutional mandate merely by relabeling or moving things around.  It's as much a violation to do something indirectly as it is directly, we usually say, right?"  The quote is followed by a reference to "**SEC v. Jarkesy**, Docket Number: 22-859 Date Argued:  11/29/2023."  In *SEC v. Jarkesy* (2024) 603 U.S. 109, the Supreme Court held that when the Securities and Exchange Commission seeks civil penalties against a defendant for securities fraud, the Seventh Amendment entitles the defendant to a jury trial.  The opinion of the court was written by Chief Justice Roberts.  Justice Gorsuch wrote a concurring opinion.  The quote attributed to him does not appear in his concurring opinion (or anywhere in the case).  Perhaps it was a statement he made during oral argument.  In any event, it is unclear how this quote is relevant to this case.

Buenzli was given an opportunity to present her case on September 17.  The reporter's transcript shows that, rather than providing testimony about the underlying facts, she made arguments that are difficult to follow, attacked the Bank's witness, complained that the information requested in the "Writ of Discovery" was never provided, and discussed her exhibits, which are not part of the clerk's transcript.  She also threatened to sue the judge "under the common law for violating [her] rights under the UCC."

After Buenzli finished her presentation, the judge found that the Bank's witness "provided competent testimony and properly authenticated the records that were admitted into evidence and that they did establish that the debt owed by defendant is $32,314.34. [¶] . . . [¶]  I also believe she's established that the debt has not been paid in full. . . .  [¶] So I do find that . . . the evidence establishes that Ms. Buenzli owes $32,314.34 based on her account with J.P. Morgan Chase, so I'm going to order judgment for plaintiff in that amount."  The judgment described above was entered that same day.

This appeal followed.

## DISCUSSION

We note at the outset that, although Buenzli is proceeding in propria persona, she " 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' [Citation.]  Indeed, ' "the in propria persona litigant is held to the same restrictive rules of procedure as an attorney." ' " (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1.)

Buenzli argues the judgment must be reversed because:  the Bank failed to prove a valid and enforceable contract or to validate the debt; billing statements are legally insufficient to establish credit card debt and they thus should not have been admitted; the Bank's witness was not qualified and her testimony was inadmissible and thus legally insufficient to support the judgment; the Bank (or perhaps the trial court) ignored "unrebutted affidavits" and "conditional acceptance"; "no standing, no injured party, no

5

jurisdiction"; and she was not given sufficient time to present her case. The gist of many (if not most) of her arguments is that the evidence was insufficient to support the judgment. For the reasons explained below, we find all of her arguments unpersuasive.

We begin our discussion with some principles of appellate review because they are dispositive of this appeal. First, "it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) "It is the burden of the party challenging a judgment on appeal to provide an adequate record to assess error." (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.) Because a judgment or order is presumed correct, " 'if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) " 'Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Jameson*, at p. 609.)

These rules are dispositive of most of Buenzli's arguments because we do not have a reporter's transcript or other record of the first day of trial, which is when the Bank presented its evidence. "Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be conclusively presumed correct as to all evidentiary matters. To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992, italics omitted.) And again: "[A]n appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an

6

argument as to the sufficiency of the evidence." (*Ibid.*) And again: " ' "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' " (*Jameson v. Desta, supra*, 5 Cal.5th at p. 609.) What this all means is that we must presume the evidence presented by the Bank on the first day of trial was sufficient to support the trial court's finding that Buenzli owed the Bank $32,314.34.

These rules also effectively dispose of any argument that the trial court erroneously admitted evidence. For example, Buenzli contends the Bank's witness was unqualified and her testimony was inadmissible.[5] She also appears to contend the trial court erred (1) in admitting certain business records (perhaps because they were not properly authenticated as required by Evid. Code, § 1271), and (2) when it overruled (or "[r]efused") her "valid objections." These arguments fail because all of the evidence Buenzli challenges was admitted on the first day of trial, and we have no reporter's transcript for that day. We thus do not know what testimony was given, what records were admitted, what foundation was laid for any records admitted, whether Buenzli made any objections to the testimony or the records, and, if so, on what grounds she objected and what the trial court ruled. "We review the trial court's rulings on relevance and admission or exclusion of evidence . . . for abuse of discretion." (*People v. Cole* (2004) 33 Cal.4th 1158, 1198.) "It is the appellant's burden on appeal to establish an abuse of discretion and prejudice." (*People v. Albarran* (2007) 149 Cal.App.4th 214, 225.) And, as noted above, an appellant also bears the burden of "provid[ing] an adequate record to assess error." (*Nielsen v. Gibson, supra*, 178 Cal.App.4th at p. 324.) Buenzli has not

---

[5] Buenzli contends the witness "lacked competency and foundation to testify under California Evidence Code §§ 720, 801." That is the extent of her argument on this issue. The two cited Evidence Code sections both deal with expert testimony. The Bank's counsel stated the witness was not called as an expert, and the trial court acknowledged, "I'm aware . . . I didn't take her as an expert witness."

provided us with a reporter's transcript for the first day of trial, and no evidentiary error "is apparent on the face of the existing appellate record." (*Estate of Fain, supra*, 75 Cal.App.4th at p. 992.) As a result, "the judgment must be conclusively presumed correct as to all evidentiary matters." (*Ibid.*, italics omitted.) Put another way, without a reporter's transcript and with no error appearing on the face of the record, we must presume the trial court only allowed admissible and relevant evidence.

The lack of an adequate record is not Buenzli's only deficit. Her brief is also wholly inadequate and her citations to legal authority are at best incorrect, at worse fabricated. As the appellant, it is Buenzli's responsibility "to support claims of error with meaningful argument and citation to authority. [Citations.] When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. [Citations.] In addition, citing cases without any discussion of their application to the present case results in forfeiture. [Citations.] We are not required to examine undeveloped claims or to supply arguments for the litigants. [Citations.]" (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.) "[A]sserted grounds for appeal that are unsupported by any citation to authority and that merely complain of error without presenting a coherent legal argument are deemed abandoned and unworthy of discussion." (*Wright v. City of Los Angeles* (2001) 93 Cal.App.4th 683, 689.) "A court need not consider an issue where reasoned, substantial argument and citation to supporting authorities are lacking." (*Woods v. Horton* (2008) 167 Cal.App.4th 658, 677.) " 'When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary.' " (*Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 600, disapproved on another ground in *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1012, fn. 2.) These rules are also dispositive of many of Buenzli's arguments because her brief is rife with citations to cases that either do not exist or do not stand for the proposition she cites them for. It should go without saying

that one cannot "support claims of error with meaningful argument and citation to authority" by citing cases that do not exist or that do not stand for the propositions for which they are cited. (*Allen*, at p. 52.)

For example, Buenzli cites "Discover Bank v. Boone (2014) 166 Cal.Rptr.3d 897" and attributes the following quote to it: " 'Without the original contract, billing statements alone are insufficient to support judgment.' " The cited case does not exist. The Cal.Rptr.3d citation refers to *Gonzalez v. Seal Methods, Inc.* (2014) 223 Cal.App.4th 405 [166 Cal.Rptr.3d 895], but that case deals with workers' compensation, not billing. We have searched Lexis for the quote attributed to the case, but it does not appear in any published or unpublished case reported in Lexis.

Most of the other cases Buenzli cites in her brief suffer from similar problems. She cites "Unifund CCR Partners v. Dear (2019) 40 Cal.App.5th 892" and attributes the following quote to it: " '[Debt buyer] failed to show a complete chain of ownership . . . Billing statements did not prove the debt's validity.' " The cited case does not exist. The Cal.App.5th citation refers to *Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, which involved a lawsuit dismissed under the anti-SLAPP statute (Code Civ. Proc., § 425.16), and which has nothing to do with billing or credit card debt. The quote Buenzli attributes to the case does not appear in any case reported in Lexis. There *is* a case called *Unifund CCR, LLC v. Dear* (2015) 243 Cal.App.4th Supp. 1 that involved credit card debt, but it does not support the proposition that billing statements are insufficient to prove a debt's validity. Indeed, it strongly suggests that billing statements *can* be sufficient to prove credit card debt. The defendant in that case incurred $25,000 in Citibank credit card charges. Citibank sold the account to a third party, which assigned the account to another third party, which ultimately assigned the account to the plaintiff, and the plaintiff sued the defendant to recover the charges. (*Id*. at pp. 4-5.) At trial, the plaintiff submitted a declaration in lieu of testimony from its custodian of records, and attached to the declaration were the monthly billing statements from the

Citibank account. The defendant objected to the declaration and the attachment based on lack of foundation, lack of authentication, and hearsay. The trial court overruled the objections and entered judgment for the plaintiff for $25,000, and the defendant appealed, arguing the trial court erred in admitting the declaration to establish the debt. (*Id*. at p. 5.) The appellate court disagreed and affirmed the judgment, finding the trial court did not abuse its discretion in admitting the billing statements because they qualified as business records pursuant to Evidence Code section 1271. (*Unifund CCR, LLC*, at pp. 6-9.) Although the case does not hold that billing statements are always sufficient to prove the validity of credit card debt, it certainly does not hold that they are insufficient to prove a debt's validity.

Buenzli also cites "Garcia v. Bank of America Corp. (N.D.Cal. 2012) No. C 11-5537 CW, 2012 WL 1657111," and attributes the following quote to it: " 'The court found that billing statements alone do not meet the standard for debt validation under federal law. The same applies under state law when fundamental elements like the underlying agreement and itemized accounting are absent.' " The cited case does not exist. The Westlaw citation refers to *Das v. WMC Mortg. Corp.* (N.D.Cal. 2012) 2012 WL 1657111, but that case does not mention billing statements or debt validation. The quote Buenzli attributes to the case does not appear in any case reported in Lexis.

Buenzli also cites *JPMorgan Chase Bank, N.A. v. Ward* (2019) 33 Cal.App.5th 678 and attributes the following quote to it: " 'The court held that billing statements alone are insufficient to prove the existence or amount of a debt.' " The case exists, but it does not contain the quote attributed to it, and there is nothing in the case about billing statements or whether they are sufficient to prove the existence or amount of a debt. The quote attributed to the case does not appear in any case reported in Lexis.

Buenzli also cites *Greene v. Bank of America* (2013) 216 Cal.App.4th 454 and attributes the following quote to it: " 'Creditors must provide verifiable and complete transaction-level records, not summaries.' " The case exists but it does not contain the

quote attributed to it, and there is nothing in the case about what records a creditor must provide to establish a debt. The quote does not appear in any case reported in Lexis.

Buenzli also cites *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958 and attributes the following quote to it: " 'Confirms dismissal is warranted when a creditor fails to validate.' " The case exists but it does not contain the quote attributed to it. Moreover, although the case involved an attempt to collect credit card debt, the issue was whether the claim was time-barred and when it accrued, and it had nothing to do with validating a debt or dismissing a case for failing to validate. The quote does not appear in any case reported in Lexis.

Buenzli also cites "Midland Funding, LLC v. Madden (2015) 237 Cal.App.4th Supp. 1" and attributes the following quote to it: " 'An affidavit without personal knowledge and unsupported by underlying records is insufficient to prove the debt.' " The case does not exist. The Cal.App.4th cite refers to *Jones v. Credit Auto Center, Inc.* (2015) 237 Cal.App.4th Supp. 1, but that case has nothing to do with affidavits, personal knowledge, or debt. The quote does not appear in any case reported in Lexis, and even if it did, Buenzli fails to explain how it is relevant because it appears the Bank's witness testified at trial and did not submit an affidavit.

Buenzli also cites "Portfolio Recovery Assoc. v. King (2012) 55 Cal.4th 659" to support the proposition that the Bank "failed to present an injured party (required under Common Law), failed to establish legal ownership of the debt, and failed to show standing under California Evidence Code § 403."[6] The cited case does not exist. The Cal.4th citation refers to *People v. Rutterschmidt* appearing at 55 Cal.4th 650, which is a criminal case dealing with the constitutional right to confront adverse witnesses and has

---

[6] Evidence Code section 403 does not deal with standing; it deals with determining foundational or other preliminary facts where relevancy, personal knowledge, or authenticity are disputed.

11

nothing to do with injured party requirements, ownership of debt, or standing.

Buenzli also cites "Cach LLC v. Rodgers (2011) 195 Cal.App.4th Supp. 1" and attributes the following quote to it: " 'A debt buyer must show how and when it acquired the debt, or it lacks standing.' " The cited case does not exist. There is a case called *CACH LLC v. Rodgers* (2014) 229 Cal.App.4th Supp. 1, but it deals with Code of Civil Procedure section 98, which allows a party to offer testimony from relevant witnesses in the form of affidavits or declarations in certain circumstances. Section 98 does not appear applicable here.

We note the court in *Noland v. Land of the Free, L.P.* (2025) 114 Cal.App.5th 426 recently addressed the issue of the filing of an appellate brief "replete with fabricated quotes and citations." (*Id*. at p. 441.) In response to the submitted brief, the *Noland* court issued an order to show cause (OSC) why it should not sanction plaintiff's counsel. (It ultimately did in the amount of $10,000.) The plaintiff's counsel filed a written response to the OSC acknowledging that he had relied on artificial intelligence (AI) to " 'support citation of legal issues' and that the fabricated quotes were AI-generated." (*Ibid.*) While we suspect the same here, we dispense with an OSC because regardless of whether Buenzli has relied on AI to provide some of her legal citations, we would be justified in striking the opening brief or dismissing the appeal under our inherent authority to do so. (*Id*. at pp. 442-443.) The filing of a brief that rests on nonexistent legal authority makes this appeal frivolous. (*Id*. at p. 447.) Additionally, the reference to nonexistent legal authority violates rule 8.204(a)(1)(B) of the California Rules of Court, which requires parties to support each point in a brief "if possible, by citation of authority." Citation to nonexistent legal authority cannot satisfy said rule.

Despite our admonishment at the outset of our analysis that Buenzli, as a propria persona litigant, " ' "is held to the same restrictive rules of procedure as an attorney" ' " (*First American Title Co. v. Mirzaian, supra*, 108 Cal.App.4th at p. 958, fn. 1), we decline to pursue the issuance of sanctions, *for now*. The respondent in this case has not

12

participated in this appeal. Thus, the burden of verifying the cited legal authority has only fallen upon this court. While not under emphasizing the impact of this burden, we note that reading and verifying support for legal positions is our job. Though in the current state of affairs, one much more complicated.

In addition to citing cases that do not exist, Buenzli also cites statutes without explaining their relevance. For example, she cites title 15 United States Code section 1692g and Civil Code section 1788.58, but she fails to explain how either section is relevant to this case.[7] She also cites three provisions of the Uniform Commercial Code, title 18 United States Code section 8, and two unattributed "commerce law maxims," but, again, with no argument explaining their relevance or applicability. "A court need not consider an issue where reasoned, substantial argument and citation to supporting authorities are lacking. [Citations.] The mere assertion of a statutory or constitutional violation, followed by simply a citation to the statute or constitutional provision, does not merit a judicial response." (*Woods v. Horton, supra*, 167 Cal.App.4th at p. 677.)

Finally, Buenzli claims the judge cut the trial short and denied her sufficient time

---

**7** Title 15 United States Code section 1692g requires debt collectors to provide certain information to consumers in connection with the collection of a debt, including: the amount of the debt; the name of the creditor; a statement that unless the consumer timely disputes the validity of the debt it will be assumed to be valid; a statement that if the consumer notifies the debt collector that the debt is disputed, the debt collector will obtain verification of the debt or a copy of the a judgment against the debtor and mail it to the consumer; and a statement that the consumer may request the name and address of the original debtor if different than the current creditor. (15 U.S.C. § 1692g(a).) Buenzli appears to contend section 1692g requires a debt collector to provide "a complete accounting of the debt," a "chain of title," and "verification of the amount due," but we see nothing in that section that supports her contention. Civil Code section 1788.58 provides a complaint in "an action brought by a debt buyer on a consumer debt" must contain certain allegations. Here, there is nothing in the record that suggests the Bank is a "debt buyer," and even if we assume it is, the complaint is not part of the record on appeal, and we thus have no way of knowing whether it contained the required allegations.

to present her case. She cites *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, albeit with no discussion. In that case, our Supreme Court held, " 'One of the elements of a fair trial is the right to offer relevant and competent evidence on a material issue. . . . [Citations.]' [Citation.] Ordinarily, parties have the right to testify in their own behalf [citation], and a party's opportunity to call witnesses to testify and to proffer admissible evidence is central to having his or her day in court." (*Id*. at p. 1357.) Buenzli fails to convince us she was deprived of the right to offer relevant and competent evidence on any material issues. We do not have a transcript or other record of what happened on the first day of trial, and it does not appear from the transcript of the second day of trial that the judge would not let Buenzli present evidence. The judge allowed her to make a lengthy statement, and she concluded her statement by asking that the case be dismissed. The judge then asked her, "Is there anything else you needed to add that you did not already tell me?" And she responded, "No." There is nothing in the record before us that suggests Buenzli was denied the right to present her case.

## DISPOSITION

The judgment is affirmed. The Bank shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


＿＿＿＿＿＿/s/＿＿＿＿＿＿＿
EARL, P. J.


We concur:


＿＿＿＿/s/＿＿＿＿＿＿＿
ROBIE, J.


＿＿＿＿/s/＿＿＿＿＿＿＿
MESIWALA, J.